### UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF FLORIDA
CASE NO.

TAYLOR MADE GOLF COMPANY, INC.,

        Plaintiff,

vs.

THE INDIVIDUALS, BUSINESS ENTITIES,
AND UNINCORPORATED ASSOCIATIONS
IDENTIFIED ON SCHEDULE "A,"

        Defendants.

_____/

### COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

Plaintiff, Taylor Made Golf Company, Inc. ("Taylor Made Golf" or "Plaintiff"), hereby sues Defendants, the Individuals, Business Entities, and Unincorporated Associations Identified on Schedule "A" (collectively "Defendants"). Defendants are each promoting, offering for sale, selling, and/or distributing goods using counterfeits and confusingly similar imitations of Taylor Made Golf's trademarks within this district through various Internet based e-commerce stores operating under the seller names set forth on Schedule "A" (the "Selling E-commerce Store Names"). Additionally, some Defendants have set up a transaction laundering scheme with intermediary or "middleman" e-commerce stores, including at least the intermediary e-commerce stores identified on Schedule "A" hereto (the "Intermediary E-commerce Store Names"), re-routing the payment processing for purchases of counterfeit Taylor Made Golf branded goods from the Selling E-commerce Store Names to the Intermediary E-commerce Store Names (the Selling E-commerce Store Names and the Intermediary E-commerce Store Names are collectively referred to herein as the "E-commerce Store Names"). In support of its claims, Taylor Made Golf alleges as follows:

## JURISDICTION AND VENUE

1.      This is an action for damages and injunctive relief for federal trademark counterfeiting and infringement, false designation of origin, common law unfair competition, and common law trademark infringement pursuant to 15 U.S.C. §§ 1114, 1116, and 1125(a), The All Writs Act, 28 U.S.C. § 1651(a), and Florida's common law. Accordingly, this Court has subject matter jurisdiction over this action pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338. This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over Taylor Made Golf's state law claims because those claims are so related to the federal claims that they form part of the same case or controversy.

2.      Defendants are subject to personal jurisdiction in this district because they direct business activities toward and conduct business with consumers throughout the United States, including within the State of Florida and this district through at least, the Internet based e-commerce stores accessible and doing business in Florida and operating under their E-commerce Store Names. Alternatively, based on their overall contacts with the United States, Defendants are subject to personal jurisdiction in this district pursuant to Federal Rule of Civil Procedure 4(k)(2) because (i) Defendants are not subject to jurisdiction in any state's court of general jurisdiction; and (ii) exercising jurisdiction is consistent with the United States Constitution and laws.

3.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391 since Defendants are, upon information and belief, non-residents in the United States and engaged in infringing activities and causing harm within this district by advertising, offering to sell, selling and/or shipping infringing products into this district.

## THE PLAINTIFF

4.      Taylor Made Golf is a corporation organized under the laws of the State of Delaware, having its office and principal place of business at 5545 Fermi Court, Carlsbad, California 92008. Taylor Made Golf is, in part, engaged in the business of manufacturing and distributing throughout the world, including within this district, golf equipment and related products under multiple world-famous common law and federally registered trademarks, including those identified in paragraph 17 below.

5.      Taylor Made Golf is a member of the U.S. Golf Manufacturers Anti-Counterfeiting Working Group, which is made up of six of the largest golf manufacturers in the world, whose brands include Titleist, FootJoy, Vokey Design, Scotty Cameron, Callaway, Odyssey, Srixon, Cleveland Golf, XXIO, PING, PXG; and Taylor Made, among others. The U.S. Golf Manufacturers Anti-Counterfeiting Working Group was founded to combat common sources of counterfeit goods which cause harm to the various members' brands individually, and to the sport of golf in its entirety, which results in further harm to its members' brands.[1] Since 2004, the U.S. Golf Manufacturers Anti-Counterfeiting Working Group has worked with international law enforcement and government agencies to conduct raids and investigations of counterfeit operations, as well as raise public awareness of the issue.

6.      Taylor Made Golf's goods are sold through various channels of trade within the State of Florida, including this district, and throughout the United States. Defendants, through the offer to sell, and sale of counterfeit and infringing Taylor Made Golf branded products, are directly and unfairly competing with Taylor Made Golf's economic interests in the United States, including

---

[1] Plaintiff became aware of Defendants and the E-commerce Store Names at issue in this Complaint through the U.S. Golf Manufacturers Anti-Counterfeiting Working Group.

within the State of Florida and causing Taylor Made Golf irreparable harm and damage within this jurisdiction.

7.      Like many other famous trademark owners, Taylor Made Golf suffers ongoing daily and sustained violations of its trademark rights at the hands of counterfeiters and infringers, such as Defendants herein, who wrongfully reproduce and counterfeit Taylor Made Golf's trademarks for the twin purposes of (i) duping and confusing the consuming public and (ii) earning substantial profits across their e-commerce stores. The natural and intended byproduct of Defendants' combined actions is the erosion and destruction of the goodwill associated with Taylor Made Golf's name and associated trademarks, and the destruction of the legitimate market sector in which it operates.

8.      To combat the indivisible harm caused by the concurrent actions of Defendants and others engaging in similar conduct, each year Taylor Made Golf expends significant monetary and other resources in connection with trademark enforcement efforts, including legal fees, investigative fees, and support mechanisms for law enforcement. The exponential growth of counterfeiting over the Internet, including through online marketplace and social media platforms, has created an environment that requires Taylor Made Golf to expend significant resources across a wide spectrum of efforts to protect both consumers and it from the confusion and the erosion of the goodwill embodied in Taylor Made Golf's brands.

## THE DEFENDANTS

9.      Defendants are individuals, business entities of unknown makeup, or unincorporated associations each of whom, upon information and belief, either reside and/or operate in foreign jurisdictions, redistribute products from the same or similar sources in those locations, and/or ship their goods from the same or similar sources in those locations to consumers

4

as well as shipping and fulfillment centers, warehouses, and/or storage facilities within the United States to redistribute their products from those locations. Defendants have the capacity to be sued pursuant to Federal Rule of Civil Procedure 17(b). Defendants target their business activities toward consumers throughout the United States, including within this district through the simultaneous operation of, at least, their commercial Internet based e-commerce stores under the Selling E-commerce Store Names and using the Intermediary E-commerce Store Names in connection therewith.

10.    Some Defendants operate the Selling E-commerce Store Names in tandem with the payment Intermediary E-commerce Store Names, thereby creating an interconnected ecosystem.

11.    Defendants use aliases in conjunction with the operation of their businesses, including but not limited to those identified by Defendant Number on Schedule "A."

12.    Defendants are the past and/or present controlling forces behind the operation of the E-commerce Store Names and the sale of products using counterfeits and infringements of Taylor Made Golf's trademarks as described herein.

13.    Defendants directly engage in unfair competition with Taylor Made Golf by advertising, offering for sale, and selling goods each using counterfeits and infringements of one or more of Taylor Made Golf's trademarks to consumers within the United States and this district through Internet based e-commerce stores using, at least, the E-commerce Store Names, as well as additional e-commerce store or seller identification aliases, not yet known to Taylor Made Golf. Defendants have purposefully directed some portion of their unlawful activities toward consumers in the State of Florida through the advertisement, offer to sell, sale, and/or shipment of counterfeit and infringing branded versions of Taylor Made Golf's branded goods into the State.

14.     Defendants have registered, established, or purchased and maintained their E-commerce Store Names. Defendants may have engaged in fraudulent conduct with respect to the registration or maintenance of the E-commerce Store Names by providing false and/or misleading information during the registration or maintenance process related to their respective E-commerce Store Names. Some Defendants have registered and/or maintained their E-commerce Store Names for the sole purpose of engaging in unlawful infringing and counterfeiting activities.

15.     Defendants will likely continue to register or acquire new e-commerce store names or other aliases, as well as related payment accounts, for the purpose of offering for sale and/or selling goods using counterfeit and confusingly similar imitations of Taylor Made Golf's trademarks unless preliminarily and permanently enjoined.

16.     Defendants' Selling E-commerce Store Names, Intermediary E-commerce Store Names, associated payment accounts, and any other alias e-commerce store or seller identification names used in connection with the sale of counterfeit and infringing goods using one or more of Taylor Made Golf's trademarks, are essential components of Defendants' online activities and are one of the means by which Defendants further their counterfeiting and infringement schemes and cause harm to Taylor Made Golf. Moreover, Defendants are using Taylor Made Golf's famous brand name and/or trademarks to drive Internet consumer traffic to their e-commerce stores operating under the E-commerce Store Names, thereby increasing the value of the E-commerce Store Names and decreasing the size and value of Taylor Made Golf's legitimate marketplace and intellectual property rights at Taylor Made Golf's expense.

## COMMON FACTUAL ALLEGATIONS

### Plaintiff's Business and Trademark Rights

17.     Taylor Made Golf is the owner of the following trademarks which are valid and registered on the Principal Register of the United States Patent and Trademark Office (the "Taylor Made Golf Marks"):

| Trademark | Registration Number | Registration Date | Class / Goods |
|---|---|---|---|
| TAYLOR MADE | 1,200,542 | July 6, 1982 | IC 028. Golf Clubs. |
| TAYLOR MADE | 1,374,009 | December 3, 1985 | IC 028. Golf Bags and Golf Club Head Covers. |
| TAYLOR MADE | 1,420,059 | December 9, 1986 | IC 018. Golf umbrellas. IC 025. Golf hats, visors and golf gloves. IC 028. Golf bag travel covers and golf equipment bags. |
| *TaylorMade* | 2,557,110 | April 2, 2002 | IC 018. Golf umbrellas, luggage and bags, namely, non-canvas tote bags, for golfers. IC 025. Clothing, namely, hats, visors, caps. IC 028. Golf equipment, namely golf clubs, golf grips, putters, shafts, golf balls, golf gloves, golf tees, golf club covers, and golf bags. |
| *(T logo)* | 2,557,111 | April 2, 2002 | C 018. Golf umbrellas, luggage and bags, namely, non-canvas tote bags, for golfers. IC 025. Clothing, namely, hats, visors, caps. IC 028. Golf equipment, namely golf clubs, golf grips, putters, shafts, golf balls, golf gloves, golf tees, golf club covers, and golf bags. |
| TWIST FACE | 5,589,137 | October 23, 2018 | IC 028. Golf clubs. |

| | | | |
|---|---|---|---|
| *M4* | 5,760,446 | May 28, 2019 | IC 028. Golf clubs. |
| SPIDER | 6,134,005 | August 25, 2020 | IC 028. Golf clubs, golf club head covers, golf club grips, golf club shafts, golf tees, golf bags. |
| *Spider* | 6,134,006 | August 25, 2020 | IC 028. Golf clubs, golf club head covers, golf club grips, golf club shafts, golf tees, golf bags. |

The Taylor Made Golf Marks are used in connection with the manufacture and distribution of high-quality goods in the categories identified above. True and correct copies of the Certificates of Registration for the Taylor Made Golf Marks are attached hereto as Composite Exhibit "1."

18.     Before Defendants began their infringing activities complained of herein, the Taylor Made Golf Marks have been used in interstate commerce to identify and distinguish Taylor Made Golf's high-quality goods for an extended period of time.

19.     The Taylor Made Golf Marks serve as symbols of Taylor Made Golf's quality, reputation and goodwill.

20.     Taylor Made Golf expends substantial resources developing, advertising and otherwise promoting the Taylor Made Golf Marks.

21.     Taylor Made Golf extensively uses, advertises, and promotes the Taylor Made Golf Marks in the United States in association with the sale of high-quality products.

22.     The Taylor Made Golf Marks have achieved secondary meaning as identifiers of high-quality goods as a result of Taylor Made Golf's advertisement, promotion and sale of such goods thereunder.

23.     As a result of Taylor Made Golf's efforts, members of the consuming public readily identify merchandise bearing or sold under the Taylor Made Golf Marks, as being high-quality merchandise sponsored and approved by Taylor Made Golf.

24.    Taylor Made Golf has carefully monitored and policed the use of the Taylor Made Golf Marks and has never assigned or licensed the Taylor Made Golf Marks to any Defendant in this matter.

25.    Genuine goods bearing the Taylor Made Golf Marks are widely legitimately advertised and promoted by Taylor Made Golf, authorized distributors and unrelated third parties via the Internet. Visibility on the Internet, particularly via Internet search engines and social media platforms, is important to Taylor Made Golf's overall marketing and consumer education regarding its products, including search engine optimization, search engine marketing, and social media strategies. Those strategies allow Taylor Made Golf and its authorized retailers to educate consumers fairly and legitimately about the value associated with the Taylor Made Golf Marks and the goods sold thereunder, and the problems associated with the counterfeiting of Taylor Made Golf's trademarks.

**Defendants' Infringing Activities**

26.    Defendants are each promoting, advertising, distributing, offering for sale, and/or selling goods in interstate commerce using counterfeit and confusingly similar imitations of one or more of the Taylor Made Golf Marks (the "Counterfeit Goods") through at least the e-commerce stores operating under the Selling E-commerce Store Names, and some Defendants are using the Intermediary E-commerce Store Names in connection therewith. Specifically, Defendants are using one or more of the Taylor Made Golf Marks to initially attract online consumers and drive them to Defendants' e-commerce stores operating under their Selling E-commerce Store Names. Defendants are each using identical copies of one or more of the Taylor Made Golf Marks for different quality goods. Taylor Made Golf used the Taylor Made Golf Marks extensively and

continuously before Defendants began offering counterfeit and confusingly similar imitations of Taylor Made Golf's merchandise.

27.     Defendants' Counterfeit Goods are of a quality substantially different than that of Taylor Made Golf's genuine goods. Defendants are actively using, promoting and otherwise advertising, distributing, offering for sale, and/or selling substantial quantities of their Counterfeit Goods with the knowledge and intent that such goods will be mistaken for the genuine quality goods offered for sale by Taylor Made Golf despite Defendants' knowledge that they are without authority to use the Taylor Made Golf Marks. Defendants' actions are likely to cause confusion of consumers at the time of initial interest, sale, and in the post-sale setting, who will believe all of Defendants' goods are genuine goods originating from, associated with, and/or approved by Taylor Made Golf.

28.     Defendants advertise their e-commerce stores, including their Counterfeit Goods offered for sale, to the consuming public via e-commerce stores on, at least, the E-commerce Store Names. In so doing, Defendants improperly and unlawfully use one or more of the Taylor Made Golf Marks without Taylor Made Golf's permission.

29.     Most Defendants are concurrently employing and benefitting from substantially similar advertising and marketing strategies based, in large measure, upon an unauthorized use of counterfeits and infringements of the Taylor Made Golf Marks. Specifically, Defendants are using counterfeits and infringements of one or more of the Taylor Made Golf Marks to make their e-commerce stores selling unauthorized goods appear more relevant and attractive to consumers searching for both Taylor Made Golf and non-Taylor Made Golf goods and information online. By their actions, Defendants are jointly contributing to the creation and maintenance of an unlawful marketplace operating in parallel to the legitimate marketplace for Taylor Made Golf's

genuine goods. Defendants are causing individual, concurrent, and indivisible harm to Taylor Made Golf and the consuming public by (i) depriving Taylor Made Golf of its right to fairly compete for space online and within search engine results and reducing the visibility of Taylor Made Golf's genuine goods on the World Wide Web, (ii) causing an overall degradation of the value of the goodwill associated with the Taylor Made Golf Marks by viewing inferior products in either the pre or post sale setting, and/or (iii) increasing Taylor Made Golf's overall cost to market its goods and educate consumers about its brand via the Internet.

30.     Additionally, some Defendants are using their Intermediary E-commerce Store Names to reroute the payment processing for the sale of goods bearing and/or using counterfeits and confusingly similar imitations of Taylor Made Golf's trademarks purchased through the Selling E-commerce Store Names. Because the Intermediary E-commerce Store Names themselves do not show counterfeit Taylor Made Golf branded goods offered for sale, these Defendants can create an aura of legitimacy and evade detection of payment origination to provide payment processors and related financial institutions with the appearance that the goods they are selling are non-infringing items. Ultimately, the Intermediary E-commerce Store Names allow these Defendants to circumvent financial regulations by creating a separate payment microecosystem for the sole purpose of managing payment processing for the Selling E-commerce Store Names.

31.     Defendants are concurrently conducting and targeting their counterfeiting and infringing activities toward consumers and likely causing unified harm within this district and elsewhere throughout the United States.  As a result, Defendants are defrauding Taylor Made Golf, the relevant payment processors and financial institutions, and the consuming public for Defendants' own benefit.

32.     At all times relevant hereto, Defendants had full knowledge of Taylor Made Golf's ownership of the Taylor Made Golf Marks, including its exclusive right to use and license such intellectual property and the goodwill associated therewith.

33.     Defendants' use of the Taylor Made Golf Marks, including the promotion and advertisement, reproduction, distribution, offering for sale, and sale of their Counterfeit Goods, is without Taylor Made Golf's consent or authorization.

34.     Defendants are engaging in the above-described unlawful counterfeiting and infringing activities knowingly and intentionally or with reckless disregard or willful blindness to Taylor Made Golf's rights for the purpose of trading on Taylor Made Golf's goodwill and reputation.

35.     Defendants' above identified infringing activities are likely to cause confusion, deception and mistake in the minds of consumers before, during, and after the time of purchase. Moreover, Defendants' wrongful conduct is likely to create a false impression and deceive consumers, the public, and the trade into believing there is a connection or association between Taylor Made Golf's genuine goods and Defendants' Counterfeit Goods, which there is not.

36.     Given the visibility of Defendants' various e-commerce stores and the similarity of their concurrent actions, it is clear Defendants are either affiliated, or at a minimum, cannot help but know of each other's existence and the unified harm likely to be caused to Taylor Made Golf and the overall consumer market in which they operate because of Defendants' concurrent actions.

37.     Although some Defendants may be physically acting independently, they may properly be deemed to be acting in concert because the combined force of their actions serves to multiply the harm caused to Taylor Made Golf.

38.     Defendants' payment and financial accounts, including but not limited to those specifically set forth on Schedule "A," are being used by Defendants to accept, receive, and deposit profits from Defendants' trademark counterfeiting and infringing and unfairly competitive activities connected to their E-commerce Store Names and any other alias e-commerce store names being used and/or controlled by them.

39.     Further, Defendants, upon information and belief, are likely to transfer or secret their assets to avoid payment of any monetary judgment awarded to Taylor Made Golf.

40.     Taylor Made Golf has no adequate remedy at law.

41.     Taylor Made Golf is suffering irreparable injury and has suffered substantial damage because of Defendants' unauthorized and wrongful use of the Taylor Made Golf Marks. If Defendants' counterfeiting and infringing, and unfairly competitive activities are not preliminarily and permanently enjoined by this Court, Taylor Made Golf and the consuming public will continue to be harmed while Defendants wrongfully earn a substantial profit.

42.     The harm and damage sustained by Taylor Made Golf has been directly and proximately caused by Defendants' wrongful reproduction, use, advertisement, promotion, offers to sell, and sale of their Counterfeit Goods.

### <u>COUNT I - TRADEMARK COUNTERFEITING AND INFRINGEMENT PURSUANT TO § 32 OF THE LANHAM ACT (15 U.S.C. § 1114)</u>

43.     Taylor Made Golf hereby adopts and re-alleges the factual allegations set forth in Paragraphs 1 through 42 above.

44.     This is an action for trademark counterfeiting and infringement against Defendants based on their use of counterfeit and confusingly similar imitations of the Taylor Made Golf Marks in commerce in connection with the promotion, advertisement, distribution, offering for sale, and/or sale of the Counterfeit Goods.

45.     Specifically, each Defendant is promoting and otherwise advertising, selling, offering for sale, and distributing goods using counterfeits and/or infringements of one or more of the Taylor Made Golf Marks. Defendants are continuously infringing and inducing others to infringe the Taylor Made Golf Marks by using one or more of the Taylor Made Golf Marks to advertise, promote, offer to sell and/or sell counterfeit and infringing Taylor Made Golf branded goods.

46.     Defendants' concurrent counterfeiting and infringing activities are likely to cause and cause confusion, mistake, and deception among members of the trade and the general consuming public as to the origin and quality of Defendants' Counterfeit Goods.

47.     Defendants' unlawful actions have caused and are continuing to cause unquantifiable damage and irreparable harm to Taylor Made Golf and are unjustly enriching Defendants with profits at Taylor Made Golf's expense.

48.     Defendants' above-described unlawful actions constitute counterfeiting and infringement of the Taylor Made Golf Marks in violation of Taylor Made Golf's rights under § 32 of the Lanham Act, 15 U.S.C. § 1114.

49.     Taylor Made Golf has no adequate remedy at law. Taylor Made Golf has suffered and will continue to suffer irreparable injury and damage because of Defendants' above-described activities if Defendants are not preliminarily and permanently enjoined, and Defendants will continue to wrongfully profit from their unlawful activities.

## COUNT II - FALSE DESIGNATION OF ORIGIN
## PURSUANT TO § 43(a) OF THE LANHAM ACT (15 U.S.C. § 1125(a))

50.     Taylor Made Golf hereby adopts and re-alleges the factual allegations set forth in Paragraphs 1 through 42 above.

51.     Defendants' Counterfeit Goods bearing, offered for sale, and sold using copies of one or more of the Taylor Made Golf Marks have been widely advertised and offered for sale throughout the United States via the Internet.

52.     Defendants' Counterfeit Goods bearing, offered for sale, and sold using copies of one or more of the Taylor Made Golf Marks are virtually identical in appearance to Taylor Made Golf's genuine goods. However, Defendants' Counterfeit Goods are different in quality. Accordingly, Defendants' activities are likely to cause confusion among consumers as to at least the origin or sponsorship of their Counterfeit Goods.

53.     Defendants have used in connection with their advertisement, offer for sale, and sale of their Counterfeit Goods, false designations of origin and false descriptions and representations, including words or symbols and designs, which falsely describe or represent such goods and have caused such goods to enter commerce in the United States with full knowledge of the falsity of such designations of origin and such descriptions and representations, all to Taylor Made Golf's detriment.

54.     Defendants have each authorized infringing uses of one or more of the Taylor Made Golf Marks in Defendants' advertisement and promotion of their counterfeit and infringing branded goods. Some Defendants have also misrepresented to members of the consuming public that the Counterfeit Goods they advertise and offer for sale are genuine, non-infringing goods.

55.     Additionally, Defendants are simultaneously using counterfeits and infringements of one or more of the Taylor Made Golf Marks to unfairly compete with Taylor Made Golf and others for space within organic and paid search engine and social media results. Defendants are thereby jointly (i) depriving Taylor Made Golf of valuable marketing and educational space online

which would otherwise be available to Taylor Made Golf and (ii) reducing the visibility of Taylor Made Golf's genuine goods on the World Wide Web and across social media platforms.

56.     Defendants' above-described actions are in violation of Section 43(a) of the Lanham Act, 15 U.S.C. §1125(a).

57.     Taylor Made Golf has no adequate remedy at law and has sustained both individual and indivisible injury and damage caused by Defendants' concurrent conduct. Absent an entry of an injunction by this Court, Taylor Made Golf will continue to suffer irreparable injury to its goodwill and business reputation, as well as monetary damage, while Defendants are earning a substantial profit.

## COUNT III – COMMON LAW UNFAIR COMPETITION

58.     Taylor Made Golf hereby adopts and re-alleges the factual allegations set forth in Paragraphs 1 through 42 above.

59.     This is an action against Defendants based on their promotion, advertisement, distribution, offering for sale, and/or sale of goods using or using marks that are virtually identical to one or more of the Taylor Made Golf Marks in violation of Florida's common law of unfair competition.

60.     Specifically, Defendants are promoting and otherwise advertising, selling, offering for sale, and distributing goods using or bearing counterfeits and infringements of one or more of the Taylor Made Golf Marks. Defendants are also each using counterfeits and infringements of one or more of the Taylor Made Golf Marks to unfairly compete with Taylor Made Golf and others for (i) space in search engine and social media results across an array of search terms and/or (ii) visibility on the World Wide Web.

61.     Defendants' infringing activities are likely to cause and are causing confusion, mistake, and deception among consumers as to the origin and quality of Defendants' e-commerce stores as a whole and all products sold therein.

62.     Taylor Made Golf has no adequate remedy at law and is suffering irreparable injury and damage because of Defendants' actions, while Defendants are unjustly profiting from those actions.

## COUNT IV - COMMON LAW TRADEMARK INFRINGEMENT

63.     Taylor Made Golf hereby adopts and re-alleges the factual allegations set forth in Paragraphs 1 through 42 above.

64.     This is an action for common law trademark infringement against Defendants based on their promotion, advertisement, offering for sale, and sale of their Counterfeit Goods using one or more of the Taylor Made Golf Marks.

65.     Taylor Made Golf is the owner of all common law rights in and to the Taylor Made Golf Marks.

66.     Specifically, each Defendant is promoting and otherwise advertising, distributing, offering for sale, and selling goods using and/or bearing infringements of one or more of the Taylor Made Golf Marks.

67.     Defendants' infringing activities are likely to cause and are causing confusion, mistake and deception among consumers as to the origin and quality of Defendants' Counterfeit Goods bearing the Taylor Made Golf Marks.

68.     Taylor Made Golf has no adequate remedy at law and is suffering damage and irreparable injury because of Defendants' actions, while Defendants are unjustly profiting from those actions.

## PRAYER FOR RELIEF

69.     WHEREFORE, Taylor Made Golf demands judgment on all Counts of this Complaint and an award of equitable relief and monetary relief against Defendants as follows:

a.     Entry of temporary, preliminary, and permanent injunctions pursuant to 15 U.S.C. § 1116, 28 U.S.C. § 1651(a), The All Writs Act, and Federal Rule of Civil Procedure 65, enjoining Defendants, their agents, representatives, servants, employees, and all those acting in concert or participation therewith, from manufacturing or causing to be manufactured, importing, advertising or promoting, distributing, selling or offering to sell their Counterfeit Goods; from infringing, counterfeiting, or diluting the Taylor Made Golf Marks; from using the Taylor Made Golf Marks, or any mark or design similar thereto, in connection with the sale of any unauthorized goods; from using any logo, trade name, or trademark or design which may be calculated to falsely advertise the services or goods of Defendants as being sponsored by, authorized by, endorsed by, or in any way associated with Taylor Made Golf; from falsely representing themselves as being connected with Taylor Made Golf, through sponsorship or association, or engaging in any act which is likely to falsely cause members of the trade and/or of the purchasing public to believe any goods or services of Defendants are in any way endorsed by, approved by, and/or associated with Taylor Made Golf; from using any reproduction, counterfeit, infringement, copy, or colorable imitation of the Taylor Made Golf Marks in connection with the publicity, promotion, sale, or advertising of any goods sold by Defendants; from affixing, applying, annexing or using in connection with the sale of any goods, a false description or representation, including words or other symbols tending to falsely describe or represent Defendants' goods as being those of Taylor Made Golf, or in any way endorsed by Taylor Made Golf and from offering such goods in commerce; from engaging in search engine optimization strategies using colorable imitations of

Taylor Made Golf's name or trademarks; and from otherwise unfairly competing with Taylor Made Golf.

b.      Entry of temporary, preliminary, and permanent injunctions pursuant to 28 U.S.C. § 1651(a), The All Writs Act, and the Court's inherent authority, enjoining Defendants and all third parties with notice of an injunction issued by the Court from participating in, including providing financial services, technical services or other support to, Defendants in connection with the sale and distribution of non-genuine goods bearing and/or using counterfeits of the Taylor Made Golf Marks.

c.      Entry of an order pursuant to 28 U.S.C. § 1651(a), The All Writs Act, and the Court's inherent authority that upon Taylor Made Golf's request, those acting in concert or participation as service providers to Defendants, who have notice of the injunction, disable and/or cease hosting, facilitating access to, or providing any supporting service to any and all e-commerce stores, including but not limited to the E-commerce Store Names, through which Defendants engage in the promotion, offering for sale and/or sale of goods using counterfeits and/or infringements of the Taylor Made Golf Marks.

d.      Entry of an order pursuant to 15 U.S.C. § 1116, 28 U.S.C §1651(a), The All Writs Act, and the Court's inherent authority, that, upon Taylor Made Golf's request, Defendants and the top level domain (TLD) Registry for each of the E-commerce Store Names or their administrators, including backend registry operators or administrators, place the E-commerce Store Names, and any other e-commerce or domain names being used and/or controlled by Defendants to engage in the business of marketing, offering to sell, and/or selling goods bearing counterfeits and infringements of the Taylor Made Golf Marks, on Registry Hold status for the remainder of the registration period for any such e-commerce store or domain name, thus removing

them from the TLD zone files which link the E-commerce Store Names, and any other e-commerce store or domain name used by Defendants, to the IP addresses where the associated e-commerce stores or websites are hosted.

    e.  Entry of an order pursuant to 28 U.S.C. § 1651(a), The All Writs Act, and the Court's inherent authority, canceling for the life of the current registration or, at Taylor Made Golf's election, transferring the E-commerce Store Names and any other e-commerce store names used by Defendants to engage in their counterfeiting of the Taylor Made Golf Marks to Taylor Made Golf's control so they may no longer be used for unlawful purposes.

    f.  Entry of an order pursuant to 28 U.S.C. § 1651(a), The All Writs Act, and the Court's inherent authority authorizing Taylor Made Golf to upload new files to the Intermediary E-commerce Store Names for the purpose of preventing further redirections and identifying all of the e-commerce stores used by Defendants in connection with the sale of counterfeit and infringing Taylor Made Gold branded goods that reroute to the payment Intermediary E-commerce Store Names.

    g.  Entry of an order pursuant to 28 U.S.C. § 1651(a), The All Writs Act, and the Court's inherent authority, that, upon Taylor Made Golf's request, any Internet marketplace website operators and/or administrators, registrar and/or top level domain (TLD) Registry for the E-commerce Store Names who are provided with notice of an injunction issued by the Court identify any e-mail address known to be associated with Defendants' respective E-commerce Store Name.

    h.  Entry of an order pursuant to 28 U.S.C. § 1651(a), The All Writs Act, and the Court's inherent authority, authorizing Taylor Made Golf to serve an injunction issued by the Court on any e-mail service provider with a request that the service provider permanently suspend

the e-mail addresses which are or have been used by Defendants in connection with Defendants' promotion, offering for sale, and/or sale of goods using counterfeits and/or infringements of the Taylor Made Golf Marks.

   i. Entry of an Order pursuant to 28 U.S.C. § 1651(a), The All Writs Act, and the Court's inherent authority authorizing Taylor Made Golf to serve the injunction on the e-commerce store registrar(s) and/or the privacy protection service(s) for the E-commerce Store Names to disclose to Taylor Made Golf the true identities and contact information for the registrants of the E-commerce Store Names.

   j. Entry of an order pursuant to 28 U.S.C. § 1651(a), The All Writs Act, and the Court's inherent authority, authorizing Taylor Made Golf to request any Internet search engines which are provided with notice of the order, to permanently disable, de-index or delist all URLs of the E-commerce Store Names by Defendants to promote, offer for sale and/or sell goods bearing counterfeits and/or infringements of the Taylor Made Golf Marks, based upon Defendants' unlawful activities being conducted via the E-commerce Store Names as a whole and via the URLs identified by Taylor Made Golf.

   k. Entry of an order pursuant to 15 U.S.C. § 1116 and the Court's inherent authority, requiring Defendants, their agent(s) or assign(s), to assign all rights, title, and interest, to their E-commerce Store Name(s), and any other e-commerce store names being used by Defendants to engage in the business of marketing, offering to sell, and/or selling goods bearing counterfeits and infringements of the Taylor Made Golf Marks, to Taylor Made Golf and, if within five (5) days of entry of such order Defendants fail to make such an assignment, the Court order the act to be done by another person appointed by the Court at Defendants' expense, such as the Clerk of Court, pursuant to Federal Rule of Civil Procedure 70(a).

l.  Entry of an order pursuant to 15 U.S.C. § 1116 and the Court's inherent authority, requiring Defendants, their agent(s) or assign(s), to instruct all search engines to permanently delist or deindex the E-commerce Store Name(s), and any other e-commerce store names being used by Defendants to engage in the business of marketing, offering to sell, and/or selling goods bearing counterfeits and infringements of the Taylor Made Golf Marks, and, if within five (5) days of entry of such order Defendants fail to make such a written instruction, the Court order the act to be done by another person appointed by the Court at Defendants' expense, such as the Clerk of Court, pursuant to Federal Rule of Civil Procedure 70(a).

m.  Entry of an order requiring, upon Taylor Made Golf Marks's request, Defendants to request in writing permanent termination of any messaging services, E-commerce Store Names, usernames, e-commerce stores, and social media accounts they own, operate, or control on any messaging service, e-commerce marketplace, or social media website.

n.  Entry of an order requiring Defendants to account to and pay Taylor Made Golf for all profits and damages resulting from Defendants' trademark counterfeiting and infringing and unfairly competitive activities and that the award to Taylor Made Golf be trebled, as provided for under 15 U.S.C. §1117, or that Taylor Made Golf be awarded statutory damages from each Defendant in the amount of two million dollars ($2,000,000.00) per each counterfeit trademark used and product type offered for sale or sold, as provided by 15 U.S.C. §1117(c)(2) of the Lanham Act.

o.  Entry of an award pursuant to 15 U.S.C. § 1117 (a) and (b) of Taylor Made Golf's costs and reasonable attorneys' fees and investigative fees associated with bringing this action.

p.      Entry of an order pursuant to 15 U.S.C. § 1116, 28 U.S.C. § 1651(a), The All Writs Act, Federal Rule of Civil Procedure 65, and the Court's inherent authority that, upon Taylor Made Golf's request, Defendants and any financial institutions, payment processors, banks, escrow services, money transmitters, e-commerce shipping partner, fulfillment center, warehouse, storage facility, or marketplace platforms, and their related companies and affiliates, identify, restrain, and be required to surrender to Taylor Made Golf all funds, up to and including the total amount of judgment, in all financial accounts and/or sub-accounts used in connection with the E-commerce Store Names or other alias e-commerce store names used by Defendants presently or in the future, as well as any other related accounts of the same customer(s) and any other accounts which transfer funds into the same financial institution account(s), and remain restrained until such funds are surrendered to Taylor Made Golf in partial satisfaction of the monetary judgment entered herein.

q.      Entry of an award of pre-judgment interest on the judgment amount.

r.      Entry of an order requiring Defendants, at Taylor Made Golf's request, to pay the cost necessary to correct any erroneous impression the consuming public may have received or derived concerning the nature, characteristics, or qualities of Defendants' products, including without limitation, the placement of corrective advertising and providing written notice to the public.

s.      Entry of an order for any further relief as the Court may deem just and proper.

DATED: September 5, 2025.      Respectfully submitted,

STEPHEN M. GAFFIGAN, P.A.

By: **Stephen M. Gaffigan**
Stephen M. Gaffigan (Fla. Bar No. 025844)
Virgilio Gigante (Fla. Bar No. 082635)
T. Raquel Wiborg-Rodriguez (Fla. Bar. No. 103372)
401 East Las Olas Blvd., #130-453
Ft. Lauderdale, Florida 33301
Telephone: (954) 767-4819
E-mail: stephen@smgpa.cloud
E-mail: leo@smgpa.cloud
E-mail: Raquel@smgpa.cloud

Attorneys for Plaintiff,
Taylor Made Golf Company, Inc.

## SCHEDULE "A"

**[This page is the subject of Plaintiff's Motion to File Under Seal.  As such, this page has been redacted in accordance with L.R. 5.4(b)(1)]**